[Civ. No. 24249. Fourth Dist., Div. One. Oct. 12, 1982.]

In re GARY U., a Minor.
CHERYL F., Petitioner and Respondent, v.
G. E. U., Objector and Appellant.

**COUNSEL**

Joel M. Kriger, under appointment by the Court of Appeal, for Objector and Appellant.

Jeffrey K. Jayson, under appointment by the Court of Appeal, for Petitioner and Respondent.

**OPINION**

**WORK, J.**—Today, we hold a felon incarcerated in a jurisdiction other than California is not denied equal protection of the law where the State of California has statutorily provided a means by which inmates confined within its own penal system may insure their physical presence at any judicial proceeding designed to sever their parental rights, without establishing a similar mechanism for those confined by other states.[1]

We further hold a party to an action to declare his child free from his parental control has no absolute right to act as his own attorney when he shows no physical ability to be present at a hearing at any time in the reasonable future.

*Factual and Procedural Background*

Cheryl F. filed a petition to free her minor son from his father's (G. E. U.) parental custody and control and to appoint herself as her son's guardian. (Civ. Code, § 232.) Cheryl alleged she divorced the father after he was sentenced to Arizona State Prison for life with the condition he is not eligible for parole until he has served 25 years on his plea to first degree murder.

---

[1]Although we do not analyze the equal protection argument by determining if a prisoner subject to the penal jurisdiction of California is similarly situated with one confined in a jurisdiction over which this state has no control, we doubt such a showing can be made where this state cannot unilaterally affect the custodial control over prisoners outside its own jurisdiction.

The child lives with his natural mother and her present husband. The petition was filed to effect the child's adoption by his stepfather. The father does not consent to the adoption and demanded to be present at the hearing.

An Orange County probation report containing excerpts from a Maricopa County, Arizona, probation report was reviewed by the court. The Arizona report excerpts stated G. E. U. and an accomplice murdered a 12-year-old boy after robbing him of $1. G. E. U. told Cheryl he was an accomplice in the robbery during which his partner shot the 12-year-old in the back of his head.

The court admitted the entire Orange County Probation report over G. E. U.'s timely objection, including hearsay information extracted from the Arizona reports and held he had no absolute right to be personally present under Penal Code section 2625,[2] because he was a state prisoner confined outside California.[3]

The court granted the petition and declared G. E. U.'s consent was not necessary for the pending adoption.

### There Is No Equal Protection Violation

G. E. U. argues he is denied equal access to the California courts because he is confined in a state prison outside California. Since California has given its prisoners an absolute right to be physically present at Civil Code section 232 hearings if they desire, he contends it is unconstitutional to deny him the same right. He misses the point. California has not *denied* him, or any out-of-state prisoner, the right to be present. What it has done is to devise a scheme by which all state prisoners whose custody is under its direct control may physically appear if they wish.[4] The Legislature contemplated the scheme would trigger on a simple court order directed to the warden of the state prison involved. This device can only be assured of

---

[2]All statutory references are to the Penal Code unless otherwise specified.

[3]In part, section 2625 declares no Civil Code section 232 proceeding shall be held without the physical presence of a prisoner in a state prison, county jail, California Rehabilitation Center or California Youth Authority if the prisoner so requests. The court is to effectuate this appearance by issuing its order for temporary removal from the custodial institution and transportation to court. It omits any reference to federal prisoners, even within this state.

[4]The legislative purpose behind section 2625 has been analyzed as an effort to prevent abridgment of the rights of persons in *California state prisons* in the absence of a compelling state interest. (*Review of Selected 1974 California Legislation, Domestic Relations; Civil Rights of Prisoners* (1975) 6 Pacific L.J. 292.)

success in California where the custodian is subject to the mandate of section 2625 and the jurisdiction of the requesting court. G. E. U. does not argue there is any power in the California Superior Court to issue an enforceable order to an out-of-state security facility, nor that the Arizona prison warden had any duty, or authority, to respond to the California court order lodged in this case. Further, he suggests no feasible, alternative method to ever insure his physical appearance at a California hearing. Even so, the court did issue its order to the Arizona prison warden, to no avail.

## SUBSTITUTION OF COUNSEL

The court appointed counsel at the father's request on February 1, 1980. (Civ. Code, § 237.5.) The following month G. E. U., by letter, asked the court to remove his counsel; however, his motion was denied. On April 4, 1980, counsel moved to withdraw and filed a fully executed substitution of attorney substituting the father pro se. The motion was denied, the substitution ignored, and the hearing commenced July 18, 1980, at which time the mother testified and was cross-examined by G. E. U.'s appointed counsel. Later, counsel's renewed motion to withdraw was also denied. G. E. U. claims he has been denied his absolute right to self-representation.

In *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], the Supreme Court held a person charged with a *crime* has a constitutional right to proceed in a *criminal* trial when he voluntarily and intelligently elects to do so. The ruling was based upon the Sixth and Fourteenth Amendments of the United States Constitution and held the Constitution does not permit the state to force an attorney on an unwilling client, because to do so is contrary to his basic right to represent himself if he truly wants to do so.

However, this right is not absolute, even in the context of a criminal proceeding[5] and the court has discretion to deny any request which would unjustifiably delay a trial, or obstruct the orderly administration of justice. (*People* v. *Windham* (1977) 19 Cal.3d 121, 128, fn. 5 [137 Cal.Rptr. 8, 560 P.2d 1187].)

Here, the proceedings were continued several times to allow G. E. U. to be present. In an effort to assist, the superior court sent an order to the warden of the Arizona state prison having jurisdiction over G. E. U., of the type authorized by section 2625. It became apparent the combined efforts of G. E. U., his attorney and the court could not effect his

---

[5]We do not minimize the serious impact to G. E. U. of a decision which causes him to lose parental rights.

removal from the Arizona prison to attend this hearing. There is no showing any further continuances would have allowed G. E. U. to appear at any time in the reasonable future, and a great deal of evidence he could not until at least the year 2000, and perhaps never. The earliest foreseeable date would have been when the minor (who had not been in contact with his natural father since age 6-months) would be 26 years old. Thus, the effect of allowing self-representation here is to completely frustrate the purposes of Civil Code section 232 by preventing the child from being freed from ties to a parent-felon, the baseness of whose crimes clearly show unfitness to have future custody and control of the minor. ■ Where, as here, the parent is such a person, the best interests of a child unquestionably require those ties be severed and, if possible, the minor be permitted new, supportive parental ties. (See *In re Angelia P.* (1981) 28 Cal.3d 908, 923 [171 Cal.Rptr. 637, 623 P.2d 198].)

■ Were G. E. U. able to establish he could have personally appeared in the juvenile court action within a reasonable time, he was entitled to do so, and to represent himself if he truly so desires. However, he may not use his right of self-representation to effectively foreclose the rights of his child to a judicial determination at least equally important to the minor's interests as to those of the father. Here, G. E. U. was represented by counsel whom he initially requested, and he does not claim the representation was in any way inadequate. Because we hold G. E. U. had no ability to appear at the hearing, through no fault of the court or interested parties to the proceeding, it follows he had no right to remove his counsel pursuant to a claimed right of self-representation he cannot possibly provide.

### There Is a Substantial Basis for Termination

■ The original petition only alleged G. E. U.'s conviction and incarceration resulted in a term of at least 25 years before eligibility of parole and this rendered G. E. U. unfit *solely* because the child would be "deprived of a normal home" with G. E. U. "for a period of years." The quoted language expresses a ground for removal of parental rights which was deleted from Civil Code section 232, subdivision (a)(4) by amendments of 1976, leaving the sole legal ground to be the "facts of the crime . . . are of such a nature as to prove the unfitness . . . to have the future custody and control of the child."

There was no amendment to the charging allegations of the petition, and the language of the court order terminating G. E. U.'s parental rights finds his commitment shows an inability to establish a meaningful future

parent-child relationship. However, the court later documents its reliance on the contents of all the facts in the probation report which it finds contributes to a finding termination is in the minor's best interest in accordance with Civil Code section 232, subdivision (a)(4). The case was presented and argued on the "facts" of the crime, the court relied on them, and made its finding in terms of the general grounds in Civil Code section 232, subdivision (a)(4) which did relate to unfitness based upon facts of the crime. We find no prejudice to G. E. U. from the form of the petition, and ample support for the court's finding *if* the probation report hearsay were properly admitted.

### HEARSAY IN THE PROBATION REPORT AND DUE PROCESS

Respondent argues this is a nonissue because there is other, ample evidence of G. E. U.'s conviction and sentence. However, as discussed above, those facts alone are not sufficient to make the required finding.

■ Although the court is ordered to receive and consider the probation officer's report of its investigation of the circumstances allegedly bringing the child within Civil Code section 232 and the recommendation it contains (Civ. Code, § 233), its hearsay contents are only admissible when the parent is given a meaningful opportunity to controvert them. (*In re George G.* (1977) 68 Cal.App.3d 146, 157-158 [137 Cal.Rptr. 201].) This due process right entails the opportunity to cross-examine the investigative officer *and* the sources from which that person obtained the information inserted into the report. (*Long* v. *Long* (1967) 251 Cal.App.2d 732, 736 [59 Cal.Rptr. 790].) Access only to the probation officer is not sufficient. (*In re George G., supra,* 68 Cal.App.3d 146, 158.)

Here, G. E. U. claims he had no meaningful opportunity to cross-examine the sources of information extracted from the Maricopa probation report and inserted into the California report. His objection is specific:

(1) To the entire portion titled, "Natural Father's History." (The report states this information was totally extracted from a presentence report allegedly prepared by a Maricopa County, Arizona probation officer five years earlier.)

(2) Information as to length of sentences and anticipated date of parole obtained through correspondence with a named Arizona correctional officer.

(3) The California probation officer's evaluation based upon the above hearsay.

However, G. E. U. does not show how he was denied a meaningful opportunity to cross-examine the sources of this information. While he correctly states there is no statutory means for him to subpoena the named out-of-state witnesses to personally appear in the California Court,[6] he does not tell us why he was unable to examine these Arizona witnesses through depositions or interrogatories under the provisions of sections 2024 and 2018, subdivision (b) of the Code of Civil Procedure, which mandate the superior court to issue letters rogatory or appoint a commissioner for such purpose upon a showing of necessity. No such request was made.

Further, as to the material from the 1975 presentence report, he does not claim any lack of familiarity with this document. A certified and authenticated true copy of the original report was served on his attorney more than a month before the case was submitted for decision. It is inconceivable G. E. U. lacked the ability to identify those sources to which meaningful examination should have been directed, or sufficient access to satisfy due process.

Order affirmed.

Wiener, Acting P. J., and Zumwalt, J.,* concurred.

---

[6]Unlike criminal cases in which the Uniform Act to Secure the Attendance of Witnesses from Without the State (Pen. Code, §§ 1334-1334.6) is available.

*Assigned by the Chairperson of the Judicial Council.