[No. D004529. Fourth Dist., Div. One. June 11, 1987.]

In re CLEOPATRA D., a Minor.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
ROSEMARY D., Objector and Appellant.

**COUNSEL**

Joseph D'Addario, under appointment by the Court of Appeal, for Objector and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Daniel J. Wallace, Chief Deputy County Counsel, and Leonard W. Pollard II, Deputy County Counsel, for Petitioner and Respondent.

## OPINION

**WIENER, J.**—The San Diego County Department of Social Services (County) petitioned to free Cleopatra D. from the custody and control of her mother, Rosemary D. (Rosemary), alleging cruel treatment and/or neglect and failure to maintain an adequate parental relationship. (Civ. Code, § 232, subds. (a)(2) and (a)(7).)[1] Neither Rosemary nor the presumed father appeared at trial. Rosemary appeals judgment in favor of the County on grounds the court's refusal to authorize travel expenses from Saginaw, Michigan, denied her due process, equal protection and effective assistance of counsel. She also claims the County failed to show by clear and convincing evidence that permanent severance of the parent-child relationship was the least detrimental alternative for the child. We affirm the judgment.

## DISCUSSION

### I

Before trial Rosemary and Cleopatra's presumed father joined in a motion requesting transportation expenses from their home in Saginaw, Michigan, to San Diego to attend the trial. Rosemary asked that the travel costs be paid by the County. The court denied the motion for lack of statutory authority and because the history of the case "indicated absolutely no effort by the parents to have any contact with the child." Rosemary renewed her motion at the close of the County's case. The court again denied the motion on grounds that: (1) counsel for the parents had made no pretrial offer of proof of the parents' anticipated testimony; (2) the parents had failed to comply with the reunification plan, which constituted abandonment; and (3) counsel for the parents had sufficient time to file a writ after the motion was first denied, but failed to do so.

Rosemary's due process and equal protection challenge raises questions concerning the nature of parental rights and the extent to which such rights are accorded constitutional protection. ■ Although our courts acknowledge that parenting is a fundamental right to be disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood (*In re Angelia P.* (1981) 28 Cal.3d 908, 916 [171 Cal.Rptr. 637, 623 P.2d 198]), the civil nature of section 232 proceedings limits the rights available to parents in that context. ■ There is no federal constitutional right to counsel in a section 232 proceeding. (*Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 31-32 [68 L.Ed.2d 640, 652-653, 101 S.Ct. 2153].) ■ We have been cited to no case which suggests the court is

---

[1] All statutory references are to the Civil Code unless otherwise indicated.

constitutionally mandated to order the County to pay Rosemary's travel expenses here. Civil Code sections 237.5 and 237.7 provide for appointment of counsel and free transcripts for indigent parents. However, these are statutory, not constitutional rights. While we may agree with Rosemary that the right of indigent parents to be present at a proceeding to permanently sever the parent-child relationship is at least as important as the right to a transcript on appeal of judgment in that proceeding, the Legislature has not elected to authorize use of public funds for that purpose.[2] Even if there were a basis for payment of travel expenses in cases where a parent's testimony is necessary to insure due process and a constitutionally fair resolution of a section 232 proceeding, counsel's failure to make an offer of proof of Rosemary's anticipated testimony permits us to only speculate on the nature of that testimony. We conclude the court did not abuse its discretion in denying Rosemary's motion for transportation costs to attend trial.

■ Rosemary also argues that denial of her motion for travel expenses made it impossible for her attorney to provide effective representation at trial. Her attorney asserts he was unable to effectively communicate with her either by telephone or by mail. Rosemary's second argument fails for the same reasons as the first. Furthermore, a 1984 psychological evaluation determined that Rosemary had a full-scale I.Q. of 66, placing her in the mild range of mental impairment. The probation report also states that Rosemary did not have the ability to provide for herself and that she needed support and guidance in making decisions on a day-to-day basis. Rosemary's counsel provided no reason Rosemary would be able to conunicate more effectively with him in person than by telephone or mail.

## II

■ Rosemary also contends the County failed to show by clear and convincing evidence that permanent severance of the parent-child relationship was the least detrimental alternative for Cleopatra. Specifically, Rosemary asserts her situation has stabilized and there is no showing she is likely to fail in the future to provide Cleopatra with a home, care and control, and an adequate parental relationship. (§ 232, subd. (a)(7).) Findings made pursuant to section 232 must be supported by clear and convincing evidence. (§ 232, subd. (c).) ■ On review this court need only determine whether, when viewed in the light most favorable to the judgment, there is substan-

[2] Penal Code section 2625 establishes a procedure through which state prisoners incarcerated in California are able to attend section 232 hearings. However, this court has held that a father is not denied equal protection of the law, even though he is unable to be physically present at the section 232 proceedings, where he is confined in an out-of-state prison and therefore not subject to the rights created under Penal Code section 2625. (*In re Gary U.* (1982) 136 Cal.App.3d 494 [186 Cal.Rptr. 316].)

tial evidence to support the trial court's findings. (*In re Angelia P., supra,* 28 Cal.3d at p. 924; *In re Lynna B.* (1979) 92 Cal.App.3d 682, 701 [155 Cal.Rptr. 256].) ■ Although subdivision (a)(7) focuses on the parent's failures during the period the child is in foster care and the likelihood of failure in the future, past conduct is relevant on the issue of future fitness. (*In re Laura F.* (1983) 33 Cal.3d 826, 833 [191 Cal.Rptr. 464, 662 P.2d 922]; *In re Angelia B., supra,* 28 Cal.3d at p. 925.)

■ There is substantial evidence in the record to support the judgment freeing Cleopatra from Rosemary's custody and control. Other than one telephone conversation, Rosemary has had no contact with Cleopatra since the child's placement in a foster home in June 1982. Rosemary made no progress toward satisfying conditions of a reunification plan she signed in October 1982. Evidence was presented that Rosemary's older children were doing satisfactorily in their mother's custody. However, the probation report also indicated that, "[a]t best, the situation there could be diagnosed as guarded." The probation department concluded that the introduction of a young child into the household, especially one who, like Cleopatra, has physical handicaps requiring extra care, would have a detrimental impact on her well-being. The social worker who conducted the home study in November 1985 also concluded the likelihood of a successful placement of Cleopatra with Rosemary was poor.

### DISPOSITION

Judgment affirmed.

Kremer, P. J., and Butler, J., concurred.