Opinion
THE COURT.*
Rufino S., biological father[1] of minor Maria S., challenges an order setting a permanency planning hearing (Welf. & Inst. Code, § 366.22),[2] contending “inability of father to attend hearing deprives him of his right to participate” in the dependency proceedings. We disagree and therefore deny the petition.
*1311 Facts
On June 3, 1995, Maria S. was bom. She exhibited symptoms of drug withdrawal and tested positive for cocaine. Rufino abused drugs and did not prevent the birth mother from abusing drags during her pregnancy with Maria. To the contrary, Rufino actively participated in the birth mother’s drag abuse during the pregnancy and, the day before Maria’s birth, Rufino and the birth mother “were at a rock house using crack cocaine.” Rufino went beyond helping the birth mother abuse herself and their unborn child through the use of drags. He also physically abused the birth mother and Maria’s siblings.
Rufino, incarcerated throughout most of the reunification period, has had numerous police contacts since he was 18 years old. On June 29, 1988, he was convicted of spousal abuse and placed on 24 months’ probation. On February 8, 1990, he was convicted of driving under the influence, causing great bodily injury, and was sentenced to state prison for 16 months.
Rufino was on probation for a conviction for possession of a controlled substance at the time of Maria’s birth, but was soon rearrested for violating parole and was housed at Wayside Honor Rancho. On September 19, 1995, he signed a waiver of his presence at the September 21,1995, hearing on the petition. At the time he signed the waiver, Rufino told the children’s social worker (CSW) Jerry Boyd at a face-to-face meeting: “I really don’t want to go to court. I don’t want to get involved with the other kids. I would just like to see my daughter.”
Rufino was sentenced to state prison and was transferred to the California Rehabilitation Center in Norco. On July 11, 1996, Rufino signed a waiver of his presence at the July 30, 1996, hearing. The form waiver states, in pertinent part: “I do not want to attend the hearing .... I understand that the hearing will proceed without my presence.”
Rufino was represented by appointed counsel at all dependency hearings. On July 30, 1996, Rufino was ordered to participate in counseling including parenting, drags, and domestic violence. Rufino was also ordered to participate in drag testing.
Rufino was released from prison on September 30,1996; his parole officer informed the department that Rufino had been deported to Mexico. By January 21, 1997, the department was able to verify that Rufino was *1312 incarcerated in a federal detention center, awaiting deportation. Although the juvenile court terminated reunification services for the birth mother in July 1997, it ordered that the department investigate the possibility that the federal authorities might release Rufino to attend the section 366.22 hearing. In a September 18, 1997, report, the CSW stated that the Immigration and Naturalization Service would not transport Rufino to Los Angeles for fear that he would escape.
At the section 366.22 hearing, the juvenile court found that Rufino had been adequately notified. The court also noted that Rufino “has remained uninvolved with DCFS since inception of this case in June of 1995, has not maintained any contact with his family members, nor has he seen his daughter Maria since her birth, June ’95.” The court found that placing Maria with Rufino would be detrimental to her, explaining: “The parents have not complied with the case plan. In fact, the father has been totally uninvolved in this young child’s life. The father has been incarcerated most of the time during this period of [reunification].”
Discussion
Rufino does not challenge the adequacy of the reunification services. Rufino complains instead that, because he has been incarcerated in a federal prison, the “absence of a protocol procedure between State and Federal authorities to facilitate the presence of individuals such as Petitioner herein, deprives such individuals of their ability to effectively participate in dependency proceedings affecting their children.”
Penal Code section 2625 establishes a procedure through which state prisoners incarcerated in California are able to attend dependency hearings held in California. There is no statutory equivalent establishing a procedure to facilitate the attendance of out-of-state or federal prisoners. However, the absence of such an equivalent does not require the juvenile court to suspend dependency proceedings pending Rufino’s release from federal custody. Nor is the juvenile court deprived of its jurisdiction to proceed.
In In re Gary U. (1982) 136 Cal.App.3d 494 [186 Cal.Rptr. 316], Gary’s former wife filed a petition to free their minor son from Gary’s parental custody to facilitate adoption by her new husband. She had divorced Gary after he was sentenced to Arizona State Prison for life with the condition he is not eligible for parole until he has served 25 years on his plea to first degree murder. Gary did not consent to the adoption and demanded to be *1313 present at the hearing. The Orange County Superior Court held that Gary had no absolute right to be present and granted the petition. Division One of the Fourth District held: “[A] felon incarcerated in a jurisdiction other than California is not denied equal protection of the law where the State of California has statutorily provided a means by which inmates confined within its own penal system may insure their physical presence at any judicial proceeding designed to sever their parental rights, without establishing a similar mechanism for those confined by other states. [Fn. omitted.]” (Id. at p. 497.) It went on to explain: “California has not denied [Gary], or any out-of-state prisoner, the right to be present. What it has done is to devise a scheme by which all state prisoners whose custody is under its direct control may physically appear if they wish. [Fn. omitted.] The Legislature contemplated the scheme would trigger on a simple court order directed to the warden of the state prison involved. This device can only be assured of success in California where the custodian is subject to the mandate of section 2625 and the jurisdiction of the requesting court. [Gary] does not argue there is any power in the California Superior Court to issue an enforceable order to an out-of-state security facility, nor that the Arizona prison warden had any duty, or authority, to respond to the California court order lodged in this case. Further, he suggests no feasible, alternative method to ever insure his physical appearance at a California hearing.” (Id. at pp. 498-499, italics omitted.)
Maria deserves stability. She cannot wait until Rufino is released from federal custody or until Congress-changes federal incarceration procedures. She certainly cannot wait for Rufino if he is deported to Mexico. Indeed, we question Rufino’s sincerity in raising this issue—while he was incarcerated in California, he consistently waived his right to appear at all hearings and never asked to be transported to any of the dependency hearings.
The reunification period was intended not to exceed 12 months, with an extension of time to 18 months under certain circumstances. (§ 361.5, subd. (a).) That time period is not tolled by a parent’s incarceration. (§ 361.5, subd. (e)(1); In re Zacharia D. (1993) 6 Cal.4th 435, 452 [24 Cal.Rptr.2d 751, 862 P.2d 751].) When a child cannot be returned within the 18-month statutory time frame, the court is required to establish a permanent plan for the child and refer the case for a selection and implementation hearing under section 366.26. (§361.5, subd. (a).) “A parent’s rights to the care and companionship of [his] child are, of course, compelling. But the child’s rights to a stable and loving family are equally compelling, and in any decision regarding the child’s custody, the two must be balanced. The balance between the parent’s and the child’s rights shifts after the child has *1314 been removed from the parent’s home for a substantial time, owing to abuse or neglect by the parent, and the parent has failed to correct the problems which led to the removal. [Citation.]” (In re Baby Boy L. (1994) 24 Cal.App.4th 596, 609 [29 Cal.Rptr.2d 654].)
Disposition
The petition is denied.

Before Spencer, P. J., Ortega, J., and Masterson, J.

e birth mother is not a party to these proceedings.

A11 section references are to the Welfare and Institutions Code.