Filed 8/4/16  In re E.L. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| In re E.L. et al., Persons Coming Under the Juvenile Court Law. | C079843 |
| LASSEN COUNTY DEPARTMENT OF HEALTH AND SOCIAL SERVICES, | (Super. Ct. Nos. J5967, J6050) |
| Plaintiff and Respondent, | |
| v. | |
| L.B., | |
| Defendant and Appellant. | |

L.B., mother of minors E.L. and L.L., appeals from the juvenile court's orders terminating parental rights and freeing the minors for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Mother contends reversal is required because the juvenile court failed

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

to ensure her attendance at the termination hearing.  She also contends insufficient evidence supports the finding that E.L. was adoptable, and argues for remand for consideration of the sibling exception to termination of parental rights.  Because mother's arguments fail to persuade and are not supported by the record, we shall affirm.

## BACKGROUND

We limit our recitation of the facts to those relevant to the resolution of the issues raised on appeal.[2]

For the first five months of his life, E.L. (born in September 2011) lived with his mother.  His father subsequently took custody of him in February 2012 when mother was incarcerated.  In April 2013, the instant case commenced when E.L. (then 19 months old) was detained from father because of father's drug abuse and placed into foster care because both parents were incarcerated.  E.L. remained in his foster home for a year.  He did well there and was reported to be happy, interactive, easy to care for, and developmentally on track.

In April 2014, mother gave birth to L.L.  Due to the parents' history of drug abuse, a nondetaining petition was filed against mother and father on behalf of L.L.  In May 2014, E.L. was returned to his mother's custody.  The transition was reported to be uneventful and no emotional or behavior concerns were reported.

The following month (June 2014), mother relapsed into drug use and both E.L. and L.L. were removed from her custody.  The minors were placed together in a home identified as an adoptive foster home.  Both minors were healthy, happy, and transitioned

---

[2]  Mother has filed a Request for Judicial Notice seeking to expand the record on appeal to include posttermination placement information.  We deny the request and decline to consider the placement information pursuant to Code of Civil Procedure section 909.  We review an order terminating parental rights for substantial evidence at the time of the section 366.26 hearing.  (*In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1154; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.)

well. Mother moved out of town and ceased communication with the social worker. She visited inconsistently until September 2, 2014, and then stopped visiting altogether. In August, 2014, the foster parents began taking E.L. to counseling to help them discern which of his behaviors were developmental and age appropriate, and which were related to the minor's many disruptions from attachment figures. Mother's services were terminated on January 12, 2015, at a contested hearing of which she had notice but did not attend. She had also failed to attend the previous hearing, at which time the contested hearing was set on father's request.

In an attempt to preserve the minors' familial relationships, Lassen County Child and Family Services (the Department) moved the minors to the home of the paternal grandparents on October 14, 2014. The placement failed, however, as the grandparents were overwhelmed with the physical, financial and emotional demands of caring for the two young children. The minors were returned to their previous foster home on November 4, 2014.

After the minors' return to their foster family, E.L. began to demonstrate some aggressive behavior in preschool that he had not exhibited before. (He had not attended preschool while staying with his grandparents.) This behavior included hitting and spitting, distracting others, and being unable to follow directions. As a result, he was asked to leave the preschool. E.L. also exhibited behavior problems outside of school, such as ignoring his foster mother when she would pick him up from school, and soiling his pants in front of the foster mother when she returned from being absent for any period of time. He also had trouble sleeping through the night. E.L.'s counselor believed the minor was experiencing "anxious attachment" as a result of his many placements. His behavior demonstrated that he became scared and insecure when separated from her because of his previous and numerous disruptions from attachment figures.

E.L. began attending a new preschool which was better able to address his needs. He was continuing with counseling and, by March 2015, his behavior was improving. By

April 2015, the behaviors were reported to have improved a great deal.  He was physically healthy, developmentally on track, and bonded with the foster parents.  He was "only act[ing] out occasionally," which was "not unusual."  L.L. was also healthy, developmentally on track, and appeared happy and bonded with the foster parents.  The foster parents expressed an interest in adopting both minors.  The California Department of Social Services (State Adoptions) observed that the foster parents, now prospective adoptive parents, were "suitable and committed to adoption."

The social worker considered both minors to be generally adoptable and recommended termination of parental rights.  State Adoptions also concluded the minors were adoptable.  In addition to considering the attributes of the minors, both the social worker and State Adoptions emphasized the benefits of the minors' current placement, the bond between the current foster parents and the minors, and the likelihood the current foster parents would adopt the minors.

Notice of the section 366.26 hearing was sent by certified mail to mother's last known address and a Prisoner-Housing Order was prepared for father.  The hearing took place on June 1, 2015.  Mother's counsel appeared but mother was not present.  Mother's counsel indicated mother was incarcerated in Nevada and that he had been in contact with her through her Nevada attorney.  Because he had received no instructions from mother, they would be "taking no position."  Father testified at the contested hearing that he did not believe termination of parental rights was in the minors' best interests, although he did not assert that any statutory exception to adoption was applicable.

The juvenile court found the minors were likely to be adopted within a reasonable time and terminated parental rights.

4

## DISCUSSION

### I

*Mother's Attendance at the Hearing*

Mother contends the juvenile court's failure to secure her presence at the section 366.26 hearing was prejudicial error. The Department did not file a respondent's brief, but instead filed a "Reply Brief and Notice of Non-Opposition" wherein it declined to oppose mother's claims on appeal "without admitting the validity of the contents of said appeal" or "waiving any right, defense, authority, or argument the Department otherwise has or might otherwise assert." In the fourth and final sentence of this unauthorized and unhelpful one-paragraph document, the Department "acknowledge[d] that pursuant to Penal Code 2625, [mother] did have the right to be present at the hearing."

We reject the Department's concession and agree with minor L.L.'s appellate counsel that mother had no statutory right to attend the hearing.

Penal Code section 2625 provides that when a parent is incarcerated, no proceeding seeking to terminate parental rights may be held without the physical presence of the incarcerated parent or the parent's attorney, unless the parent gives the court a written waiver of the right to be present. If there is no written waiver, the court must order the parent to be transported to the hearing. (Pen. Code, § 2625, subd. (d).) For purposes of this section, "prisoner" is defined as any individual in custody "in a state prison, the California Rehabilitation Center, or a county jail, or who is a ward of the Department of the Youth Authority" or who is confined in a state hospital for the criminally insane, incompetent, or mentally disordered. (Pen. Code, § 2625, subd. (a).)

In enacting Penal Code section 2625, the Legislature has devised a scheme by which state prisoners may physically appear at the termination hearing if they wish. (*In re Gary U.* (1982) 136 Cal.App.3d 494, 498.) "The Legislature contemplated the scheme would trigger on a simple court order directed to the warden of the state prison involved. This device can only be assured of success in California where the custodian is

5

subject to the mandate of section 2625 and the jurisdiction of the requesting court." (*Id.* at pp. 498-499.)

The provision does not apply to prisoners, like mother, who are held out of state. (See *In re Maria S.* (1997) 60 Cal.App.4th 1309, 1312 ["Penal Code section 2625 establishes a procedure through which state prisoners incarcerated in California are able to attend dependency hearings held in California. There is no statutory equivalent establishing a procedure to facilitate the attendance of out-of-state or federal prisoners"]; *In re Gary U., supra*, 136 Cal.App.3d 494 [acknowledging the absolute right to be present provided for in Penal Code section 2625 applies only to California state prisoners].) Because mother was incarcerated in the Washoe County Jail, Reno, Nevada, at the time of the section 366.26 hearing, the statute did not apply to her.

Mother's reliance on *In re M.M.* (2015) 236 Cal.App.4th 955, 962-963, for the proposition that the juvenile court should have continued the hearing to ensure her presence is misplaced. First, the mother in *In re M.M.* was incarcerated in California, not out-of-state. (*Id.* at p. 960.) Second, and unlike the situation in *In re M.M.*, mother's right under Penal Code section 2625, subdivision (d), to be present at the section 366.26 hearing was not invoked by her counsel at the outset of the proceedings. Nor did mother's counsel request a continuance.

Mother argues that the juvenile court should have *attempted* to secure her presence at the hearing, even though it could not *require* the Washoe County Jail to permit her to attend. Mother presents no authority, however, establishing that the juvenile court has a sua sponte duty beyond that in Penal Code section 2625 to secure an incarcerated parent's presence at a termination hearing and we know of none. Mother's counsel did not invoke her right or communicate her desire to be at the hearing, did not request an accommodation to secure mother's participation, and did not seek a continuance. Accordingly, mother has forfeited any argument that an accommodation should have been provided. (See *In re Dakota S.* (2000) 85 Cal.App.4th 494, 501-502.)

6

In any event, even assuming that holding the hearing in mother's absence was error, we see no prejudice. (See *In re Jesusa V.* (2004) 32 Cal.4th 588, 624-625 [harmless error analysis applies to violation of Penal Code section 2625, subdivision (d)].) Mother does not point to any evidence or argument she would have provided had she been present at the hearing. She did not submit a declaration to the juvenile court for the section 366.26 hearing, nor is there any offer of proof in the record. On appeal she cursorily argues that she "was prevented from testifying as to her children's adoptability, and sibling relationship."

The record does not reflect that mother could have added anything to the information already before the juvenile court in that regard. L.L. spent only the first two months of her life with mother; E.L. spent only his first five months with her. With the exception of a failed return to her care that lasted only one month, both minors had been removed from mother since February 2012. After June 2014, mother had only sporadic contact with the minors, and she had *no* contact after September 2, 2014. Although mother argues on appeal that she had "knowledge of both issues, E.L.'s behavior and mental health," she had not even seen E.L. for months *before* his most severe behavioral issues first arose--after his aborted placement with his grandparents ended in November 2014. There was no indication that he had *any* behavioral issues until his foster parents took him to counseling in August 2014--less than a month before he last saw his mother. It is not remotely probable that mother's physical presence at the termination hearing would have changed the outcome. Thus any error was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836-837; *In re Nalani C.* (1988) 199 Cal.App.3d 1017, 1028.)

## II

### *Adoptability of Minor E.L.*

Mother also contends the juvenile court's finding that E.L. was adoptable is not supported by substantial evidence. We disagree.

7

"If the court determines, based on the assessment . . . and any other relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption." (§ 366.26, subd. (c)(1).)

"The issue of adoptability posed in a section 366.26 hearing focuses on the *minor*, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor.  [Citations.]  Hence, it is not necessary that the minor already be in a potential adoptive home or that there be a proposed adoptive parent 'waiting in the wings.' " (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649.)  On the other hand, "the fact that a prospective adoptive parent has expressed interest in adopting the minor is evidence that the minor's age, physical condition, mental state, and other matters relating to the child are not likely to dissuade individuals from adopting the minor.  In other words, a prospective adoptive parent's willingness to adopt generally indicates the minor is likely to be adopted within a reasonable time either by the prospective adoptive parent *or by some other family*." (*Id*. at pp. 1649-1650.)

We review the juvenile court's finding that the minors are likely to be adopted within a reasonable time under the substantial evidence standard, giving it the benefit of every reasonable inference and resolving any evidentiary conflicts in favor of affirming. (*In re I.I.* (2008) 168 Cal.App.4th 857, 869.)

Applying these principles to E.L., he was assessed and determined to be adoptable by both the social worker and State Adoptions.  He was a young child, physically healthy and developmentally on track.  He was described as a "little boy with a naturally sweet disposition and loving nature."  By the time of the section 366.26 hearing, he had been living with the foster adoptive parents for approximately 10 months and was bonded to them.  He had been making progress with the behavioral problems that had arisen after his most recent change in placement and was continuing his counseling.  His foster family had committed to adopting him.  No party challenged the adoptability finding at

the section 366.26, likely because the minors were living in a prospective adoptive home with no apparent impediments to adoption.

On appeal, mother focuses on E.L.'s behavior problems in asserting that the evidence does not support a finding that he is generally adoptable. E.L.'s behavior problems, however, did not reach the severity that would render him unadoptable. Indeed, his foster family had already committed to adopt him, which is in and of itself evidence of his adoptability. (*In re Sarah M., supra*, 22 Cal.App.4th at pp. 1649-1650.) Further, E.L.'s recent behavior problems were improving with time and counseling.

In addition to challenging E.L.'s general adoptability, mother argues that the evidence does not support a finding that he is specifically adoptable. Here, however, although the social worker and State Adoptions did emphasize the minor's bond with, and the benefits of adoption by, the current foster family, they did not assert that he was adoptable due solely to the existence of current prospective adoptive parents.

Even if we were to assume there was some question as to E.L.'s general adoptability, the minor was in a stable placement with identified prospective adoptive parents who were aware of his behavior problems and attachment issues. Even a minor who otherwise might be considered difficult to place for adoption may be deemed likely to be adopted if a prospective adoptive family has been identified that is willing to adopt the child. (*In re Sarah M., supra*, 22 Cal.App.4th at p. 1650.) Thus, even if the social worker *had* opined that E.L. was adoptable solely due to the existence of the current foster adoptive parents, the record reveals no evidence that there were any legal impediments to adoption by his current prospective adoptive parents. Absent any evidentiary basis for questioning the feasibility of the adoptive placement, such placement was sufficient to support a finding that he is adoptable. (See *ibid*.)[3]

---

[3] Because we conclude that substantial evidence supports the juvenile court's findings regarding E.L. and affirm the termination of parental rights, we need not reach mother's

## DISPOSITION

The orders of the juvenile court are affirmed.

/s/
Duarte, J.

We concur:

/s/ , Acting P. J.
Hull, J.

/s/
Butz, J.

---

final contention that remand is required for the juvenile court to consider the sibling exception to adoption as it relates to *L.L.'s* permanent plan of adoption.