748 A.2d 1020

**In re ADOPTION/GUARDIANSHIP NO. 6Z980001
IN the DISTRICT COURT FOR
MONTGOMERY COUNTY.**

**No. 1531, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

March 29, 2000.

188

Margaret L. Lanier, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

C.J. Messerschmidt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Submitted before EYLER, ADKINS and MARVIN H. SMITH (Ret., specially assigned), JJ.

EYLER, Judge.

On February 9, 1998, the Montgomery County Department of Health and Human Services (the Department) filed in the District Court of Maryland for Montgomery County, sitting as a juvenile court, a petition for guardianship with the right to consent to adoption regarding Laurissa P., a minor. After a hearing, the court granted the petition and terminated the parental rights of Thomas P., the minor's father, appellant.[1]

Laurissa was born on February 15, 1984. Her parents separated a few months later. Thereafter, Laurissa lived with different relatives at various locations. She had minimal contact with appellant. She saw appellant briefly in 1991, lived with him for approximately two months in 1994, and had a few telephone conversations with him after that time. Laurissa has been in the custody of the Department since October 25, 1995, when she was eleven-years old.

On March 8, 1999, appellant was convicted of conspiracy to distribute cocaine. He was sentenced to twenty-four years and four months in prison, with credit for time served from August 15, 1997. He was incarcerated in the Federal Correctional Institute in Beckley, West Virginia.

---

1. The minor's mother did not object to the petition, and her rights were terminated by default.

Given the nature of the issue presented, we only briefly review the testimony at trial. Laurissa testified that she was living with an aunt and uncle at the time of trial, was happy, adjusted, and wanted to be adopted by them. Laurissa's aunt, uncle, therapist, and three social workers all supported her testimony. One of the social workers testified to her efforts, which were unsuccessful, to facilitate contact between appellant and Laurissa to encourage appellant to state his position in writing prior to trial.

Prior to trial, appellant's counsel filed a motion to permit appellant to participate in the trial by speaker phone, citing the impossibility of his being transported to trial. Appellant's counsel requested the court to ask the federal correctional facility to make arrangements for telephone participation. The motion was denied, but the court ordered that certified copies of audiotapes of the trial be made, that they be provided to appellant after trial, and that he be given sixty days to submit a written statement.

At the beginning of trial on June 7, 1999, appellant's counsel again advised the court that transportation was not available for appellant, and counsel moved to dismiss the petition, or in the alternative, for an indefinite continuance. The court, observing that it could not arrange for transportation and could not wait for appellant's release from prison, denied both requests.

At the trial on June 7 and 8, 1999, the court received in evidence appellant's deposition based upon written questions. At the conclusion of the trial on June 8, appellant was given sixty days to review tapes of the proceedings and to prepare his testimony. In that sixty-day period, after appellant discussed the matter with his counsel, counsel prepared an affidavit reflecting the points that appellant wanted to make and sent it to appellant. Appellant never responded to that request from counsel; nevertheless, at a hearing on August 9, appellant's counsel was permitted to present the unexecuted statement to the court. The statement was as follows:

So these are, would be the words of Mr. P. or his argument. The only reason that he did not appear at the October 25, 1995 shelter care hearing was because the social worker told me that she was going to recommend that Laurissa live with the Thummas. I did not think that my presence would make any difference.

I think that Laurissa's trial testimony was biased, because of her unfortunate, bad, prior experiences with men, and because she has been living with the Thummas for so long. I also think that she is biased, because she is mad at me for not signing the adoption papers and that tainted her testimony. That would be it, thank you Your Honor.

The court found that the evidence overwhelmingly supported termination of the parents' rights and granted the Department's petition.

## Question Presented

Appellant presents the following question on appeal: Did the court violate the appellant's right to due process when it denied the motion to allow him to listen to the proceeding via speaker telephone, and when it denied the motion to dismiss or continue?

## Discussion

We first consider appellant's contention that the trial court denied his constitutional right to due process by conducting the termination proceedings in his absence. We initially observe that the record indicates that it was impossible to arrange for transportation of appellant to the trial, and this was acknowledged consistently by appellant's counsel.

In arguing that his due process rights were violated when the court denied the motion to dismiss and request for continuance based on his absence, appellant mistakenly asserts sixth amendment rights granted to a criminal defendant in a criminal trial. In particular, appellant relies on *Hughes v. State,* 288 Md. 216, 421 A.2d 69 (1980). In *Hughes,* the Court of Appeals held that a criminal defendant had a right to be

present when an administrative judge made a determination as to whether any extraordinary cause was shown that would justify a continuance. *Id.* at 229, 421 A.2d 69. Indeed, it is an accused's right to be present "at every material stage in the trial." *Brown v. State,* 272 Md. 450, 458, 325 A.2d 557 (1974) (discussing the constitutional aspects of the right).

A case involving the termination of parental rights, however, is a civil proceeding. *See, e.g., Lassiter v. Department of Soc. Servs.,* 452 U.S. 18, 25, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (noting that a termination of parental rights proceeding is a civil and not a criminal proceeding). Thus, as a general principle, the sixth amendment right of a criminal defendant to be present at trial is inapposite in this context. *See* U.S. Const. Amend. VI; *United States v. Zucker,* 161 U.S. 475, 481, 16 S.Ct. 641, 40 L.Ed. 777 (1896) ("The sixth amendment relates to a prosecution of an accused person which is technically criminal in its nature."); *One 1995 Corvette VIN No. 1G1YY22P585103433 v. Mayor and City Council of Baltimore,* 353 Md. 114, 129, 724 A.2d 680 (1999) (citing *Austin v. U.S.,* 509 U.S. 602, 608 n. 4, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)) (observing that the Supreme Court has noted that the sixth amendment Confrontation Clause is limited to criminal proceedings); *Bridges v. State,* 116 Md.App. 113, 129, 695 A.2d 609 (1997) ("The Sixth Amendment, also by its very terms, is a package of rights only for the benefit of 'the accused.' "); *see also People in Interest of C.G.,* 885 P.2d 355, 357 (Colo.Ct.App. 1994) (finding that an action to terminate parental rights is a civil proceeding; therefore, the sixth amendment confers no right of confrontation); *Matter of Adoption of J.S.P.L.,* 532 N.W.2d 653, 660 (N.D.1995) (same).

■ Additionally, while Maryland appellate courts have not had occasion to address the question of whether a parent who is incarcerated has an absolute right to appear in person at the termination hearing, several other jurisdictions have ruled on the matter. At least twenty-six states have addressed the issue, and none have concluded that an individual who was incarcerated under circumstances not permitting transporta-

tion or otherwise unable to appear personally in court has an absolute right consistent with the Due Process Clause to appear at a termination of parental rights hearing.[2] "With respect to prisoners incarcerated outside the state, there is unanimity among the jurisdictions that have decided the issue that such prisoners do not have the right to be brought into the state for the termination hearing, as long as the parent is represented by counsel and provided with alternative means of participating in the hearing." Philip M. Genty, *Procedural Due Process Rights of Incarcerated Parents in Termination of Parental Rights Proceedings: A Fifty State Analysis*, 30 J. Fam. L. 757, 775–76 (1991–92). We see no reason to reach a different result in this case.

■ We next address appellant's contention that he was denied procedural due process when the trial court refused his motion to allow him to listen to the proceeding via speaker telephone. Procedural due process mandates that a person be accorded an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424

---

**2.** *See Pignolet v. State Dep't of Pensions & Sec.*, 489 So.2d 588, 590–91 (Ala.Civ.App.1986); *E.J.S. v. State Dep't of Health & Soc. Servs.*, 754 P.2d 749, 752 (Alaska 1988); *In re Appeal in Pima County Juvenile Action*, 131 Ariz. 100, 638 P.2d 1346, 1347 n. 1 (1981); *In re Gary U.*, 136 Cal.App.3d 494, 186 Cal.Rptr. 316, 318–19 (1982); *People ex rel. C.G.*, 885 P.2d 355, 357 (Colo.Ct.App.1994); *In re Juvenile Appeal*, 187 Conn. 431, 446 A.2d 808, 813 (1982); *In re Heller*, 669 A.2d 25, 32 (Del.1995); *In re F.L.S. IV*, 232 Ga.App. 100, 502 S.E.2d 256, 257 (1998); *In re Baby Doe*, 130 Idaho 47, 936 P.2d 690, 695 (1997); *In re J.S.*, 470 N.W.2d 48, 52 (Iowa Ct.App.1991); *In re J.L.D.*, 14 Kan. App.2d 487, 794 P.2d 319, 322 (1990); *In re S.A.D.*, 481 So.2d 191, 193–94 (La.Ct.App.1985); *In re Randy Scott B.*, 511 A.2d 450, 452–54 (Me.1986); *In re Vasquez*, 199 Mich.App. 44, 501 N.W.2d 231, 233–35 (1993); *In re Welfare of HGB*, 306 N.W.2d 821, 826 (Minn.1981); *H.W.S. v. C.T.*, 827 S.W.2d 237, 242 (Mo.Ct.App.1992); *In re L.V.*, 240 Neb. 404, 482 N.W.2d 250, 257–59 (1992); *State v. Ruth Anne E.*, 126 N.M. 670, 974 P.2d 164 (1999); *In re Raymond Dean L.*, 109 A.D.2d 87, 490 N.Y.S.2d 75, 77–78 (1985); *In re F.H.*, 283 N.W.2d 202, 209–10 (N.D.1979); *In re Rich, IV*, 604 P.2d 1248, 1252–53 (Okla.1979); *State ex rel. Juvenile Dep't v. Stevens*, 100 Or.App. 481, 786 P.2d 1296, 1298–99 (1990) (en banc); *In re A.P.*, 692 A.2d 240, 243–44 (Pa.Super.Ct.1997); *Najar v. Oman*, 624 S.W.2d 385, 387 (Tex.Ct.App.1981); *State ex rel. M.A.V. v. Vargas*, 736 P.2d 1031, 1033–34 (Utah Ct.App. 1987); *In re Darrow*, 32 Wash.App. 803, 649 P.2d 858, 859–61 (1982).

U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Thus, we consider whether the alternative procedure provided in this case adequately ameliorated appellant's physical absence and ensured his meaningful participation in the proceeding.

While this issue is one of first impression in Maryland, other jurisdictions have considered the procedural safeguards required under circumstances similar to those before us. In situations when the physical presence of incarcerated parents was not possible, many states have provided other procedural safeguards. Among the alternative procedural safeguards, permitting telephone testimony is a recognized way to satisfy due process. *See* Michael J. Weber, Annotation, *Permissibility of Testimony by Telephone in State Trial*, 85 A.L.R.4th 476, 482 (1991) (concluding telephone testimony in parental termination of rights proceedings was consistent with procedural due process). Contrary to appellant's implicit assertion, however, it is not the *only* recognized way to insure that an incarcerated parent is afforded the opportunity to participate in a meaningful way in the termination process.

Rather, several states have held that a parent incarcerated out of state or otherwise prevented from attending a termination hearing was afforded due process under the circumstances when the parent received notice, was represented by counsel, and was given an opportunity to appear and testify by deposition. *See, e.g., Pignolet*, 489 So.2d at 591; *In re Appeal in Pima County Juvenile Action*, 638 P.2d at 1347 n. 1; *People ex rel. C.G.*, 885 P.2d at 357; *In re J.S.*, 470 N.W.2d at 52; *In re J.L.D.*, 794 P.2d at 322; *In re Welfare of HGB*, 306 N.W.2d at 825; *In re James Carton K., III*, 245 A.D.2d 374, 665 N.Y.S.2d 426, 429 (1997); *In re F.H.*, 283 N.W.2d at 209–10; *In re Rich, IV*, 604 P.2d at 1252–53; *Najar*, 624 S.W.2d at 387.

Other courts have held that due process requires that such an incarcerated parent be given an opportunity to review the evidence presented by the state, to consult with his or her

attorney, and then to present evidence by deposition *or* by telephone. For example, in *In re Juvenile Appeal,* an incarcerated father received transcripts of a first hearing and discussed the testimony with counsel. 446 A.2d at 811–12. The father was able to participate at a second hearing three months later, where "a speaker was attached to a telephone at the court in Connecticut and the respondent testified from his California prison; his voice was audible to all those attending the hearing." *Id.* at 812. The court held that the procedure did not violate the father's due process rights on the theory that it weakened the efficacy of his cross-examination; where he had adequate time for perusal of testimony and for consultation with his attorney; he declined court's offer to defer cross-examination until he had seen the transcript; and there was no showing that the cross-examination was defective or incomplete. *Id.*

Similarly, in *In re Baby Doe,* the Court of Appeals of Idaho held that an incarcerated father was not denied due process by not being allowed to appear in court in another state to preserve his parental rights. 936 P.2d at 695. There, an attorney was appointed, the incarcerated parent was permitted to present testimony through a deposition conducted by telephone, and the attorney was allowed to call additional witnesses at a later time. *Id.* at 693.

In *In re Randy Scott B.,* the father was confined in New Hampshire serving a life sentence. 511 A.2d at 452. The father's attorney stated that he had made arrangements with the State of New Hampshire to allow the State of Maine to transport the father to Maine for the hearing, or, in the alternative, to have the entire hearing conducted in the New Hampshire prison, but neither procedure was followed. *Id.* Instead, the father's counsel was given an opportunity to cross-examine the State's witnesses, the father testified through a deposition conducted at the New Hampshire prison by counsel for all parties, the transcript of the deposition was made a part of the hearing record, and the father's counsel was offered an opportunity to reopen the record after the deposition. *Id.* The Supreme Judicial Court of Maine found

that these procedures were constitutional, that they were not likely to lead to an erroneous termination of the father's parental rights, and that the father had no constitutional right to be physically present in court. *Id.* at 453–54.

In *In re Interest of L.V.*, the Supreme Court of Nebraska held that disallowing an incarcerated father's physical attendance at a parental rights termination hearing was not an abuse of discretion. 482 N.W.2d at 259. There, the father had received notice of the termination hearing, was represented by counsel throughout the proceeding, was notified of specific accusations against him, had been given an opportunity, through counsel, to cross-examine witnesses for the state and to call witnesses on his own behalf, and participated by telephone in the resumed termination hearing. *Id.* at 259.

In *State ex rel. Juvenile Dep't v. Stevens*, the father was incarcerated in Washington. 786 P.2d at 1298. The lower court had refused to order the State of Oregon to pay the estimated cost of $2,500 to $3,700 to bring the father to Oregon for the termination of parental rights proceeding. *Id.* Instead, counsel was appointed to represent the father, and the father was allowed to testify by telephone. *Id.* The court terminated the father's rights and he appealed. *Id.* The intermediate appellate court affirmed, holding that the failure to allow the father to be physically present for the proceeding had not violated his constitutional rights. *Id.* at 1298–99. The majority concluded, "In view of the extensive safeguards that [the father] did enjoy, we cannot say that the probable value of his physical presence in assuring an accurate and just decision was great." *Id.* at 1299.

In *In re Darrow*, the father was serving a 10–year sentence in Arizona. 649 P.2d at 859. The state of Arizona agreed to allow the father to be transported to the state of Washington, but Washington refused to pay for the costs of transportation and custody of the father. *Id.* There, the incarcerated father was represented by counsel but did not testify, by telephone or otherwise. *Id.* The Court of Appeals of Washington held that the father's due process rights were satisfied by allowing

him to be represented by counsel and permitting him to participate in the hearing "through alternative methods such as letters, photographs, depositions, or a possible continuance after the State's case in chief to provide additional information." *Id.* at 861 (citations omitted).

In *In re F.H.*, the natural mother placed her child for adoption and consented to the termination of her parental rights. 283 N.W.2d at 204. The father, incarcerated in Oregon, objected to the termination of his parental rights and announced his intention to assume custody of the child when he was released from prison. *Id.* Appointed counsel appeared and defended on the father's behalf. *Id.* at 205. On appeal from the termination of his parental rights, the father contended that due process guaranteed his right to be present at the hearing. *Id.* The court viewed the matter as one concerning a prisoner's right to defend in civil proceedings against him, noting the general view that due process guarantees access to the court but not the right to attend. *Id.* at 208–10. The court found that due process generally is satisfied if the prisoner may appear through counsel and by deposition or other method of discovery. *Id.* at 209. The court concluded that

> a convict does not have a constitutional right to personally appear in a civil suit where he has been permitted to appear through counsel and by deposition, if appropriate. Any right to appear personally would have to rest upon convincing reasons and would ultimately be left to the sound discretion of the trial court.

*Id.* at 209–10.

We reach a similar result in this case. While we acknowledge that the right of a parent to rear his or her child is a fundamental right, *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Adoption No. 93321055*, 344 Md. 458, 491–92, 687 A.2d 681 (1997); *In re Adoption No. 10941*, 335 Md. 99, 112–13, 642 A.2d 201 (1994), we find that there was no denial of due process on the facts of this case.

In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court set forth factors to consider in a due process analysis:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. 893 (citing *Goldberg v. Kelly,* 397 U.S. 254, 263–71, 90 S.Ct. 1011, 25 L.Ed.2d 287).

The Court of Appeals has recognized that, in the termination of parental rights context, the private interests and the governmental interests are strong countervailing interests; thus, a pivotal issue is the risk of error created by the challenged procedure. *See In Re: Adoption No. 93321055,* 344 Md. 458, 491–92, 687 A.2d 681 (1997).

It is evident that the risk of an erroneous deprivation of parental rights is magnified unless arrangements are made to permit an incarcerated parent to present evidence, to consult with his or her attorney, and to confront the witnesses called by the State. Appellant asserts that the risk of error applicable here was that he was not able to participate in cross-examination, and had he been permitted to do so, he could have made suggestions to counsel. There is no suggestion, however, that in spite of appellant's incarceration, he and his counsel were unable to communicate to prepare for the proceeding. There is no suggestion that appellant's counsel did not perform effectively, and specifically, no suggestions of any inadequacies in counsel's cross-examination. When given an opportunity to respond by affidavit, appellant chose not to do so.

We can not say that appellant was denied a meaningful opportunity to participate in the proceeding or that the alternative procedure used under the circumstances created an

enhanced risk of error. As the previously discussed case law suggests, when the parent is incarcerated out of state and unable to attend the hearing, meaningful participation may be accomplished in several ways. In this case, appellant was afforded a full and fair opportunity to defend while represented by able counsel. Appellant was given the opportunity to appear by deposition, and did so. Certified copies of audiotapes of the trial were made, provided to appellant, and appellant was given sixty days to review the tapes and to prepare a written statement. Moreover, appellant does not claim that any specific portion of the trial was affected by his absence or that his inability to testify via telephone hampered any specific portion of trial preparation or strategy.

The question of what process is due depends on the facts of each case. We should not be understood as promulgating a general rule that due process will never require a parent incarcerated out of State to be transported if it could readily be done and meaningful access could not otherwise be provided. Similarly, we should not be understood as stating that due process will always require a parent incarcerated in the State to be transported, if facts demonstrate that such cannot be done. What is required is meaningful access to the courts. In determining whether meaningful access to the courts is being provided, a trial court should consider all relevant factors, including whether the incarcerated individual can be transported to the courthouse, the need for an early termination of the matter or whether it could be continued to permit the presence of or greater participation by the individual, and the nature and extent of alternative arrangements when the individual's presence is not possible.

In conclusion, we find that appellant received a full and fair opportunity to present evidence on his behalf, to consult with his attorney, and to rebut evidence offered against him. The denial of appellant's request to be present or to testify via telephone did not deny him due process.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**