## Adoption of Edmund.[1]

No. 00-P-33.

Essex. October 5, 2000. - November 30, 2000.

Present: Beck, Dreben, & Duffly, JJ.

*Adoption,* Dispensing with parent's consent. *Parent and Child,* Adoption, Dispensing with parent's consent to adoption. *Due Process of Law,* Adoption.

Where a father, who was incarcerated in New Hampshire, was not given an opportunity to participate by teleconference in a proceeding to dispense with parental consent to adoption due to difficulties with a Probate Court's new telephone equipment and where, despite his timely and persistent requests, he was not afforded any other method to have a meaningful opportunity to be heard, the judgment dispensing with the father's consent to adoption was vacated and the matter remanded for further proceedings. [528-530, 531]

Petition to dispense with consent to adoption filed in the Essex Division of the Probate and Family Court Department on June 28, 1994.

The case was heard by *Mary McCauley Manzi,* J.

*Robert J. McCarthy, Jr.,* for the father.

*Lisa Thompson Cioffi* for Department of Social Services.

*Garry M. O'Brien* for the child.

Duffly, J. A decree dispensing with the need to obtain a father's[2] consent to the adoption of his child, pursuant to G. L. c. 210, § 3, was entered in the Probate and Family Court on August 5, 1999, after trial. The father, who was not present at trial because he was incarcerated in New Hampshire, claims on appeal that he was not afforded a meaningful opportunity to be heard. We agree with the father and remand for further proceedings consistent with this opinion.

---

[1] A pseudonym.

[2] The mother, who was a party to the petition to dispense with consent, did not file a notice of appeal.

The Department of Social Services (department) filed a petition to dispense with consent to the adoption of Edmund on June 28, 1994. The father filed an objection to the petition. On June 25, 1995, the father, already in prison in New Hampshire, filed a petition for writ of habeas corpus ad testificandum with the New Hampshire court seeking leave to attend trial in Massachusetts. The New Hampshire judge declined to allow the father to appear in Massachusetts, but ordered that he could appear if the trial were conducted in New Hampshire. Further proceedings, not here relevant, ensued and eventually a trial was scheduled in a Massachusetts Probate and Family Court. On October 20, 1998, the father's request that the trial be conducted in New Hampshire was denied by the Probate Court judge. However, the judge entered orders "to provide alternate means for the presence of the [defendant] by telephone[,] video and/or deposition."

On July 13, 1999, the date of the trial, the father's attorney informed the trial judge that he had arranged for his client, who was still incarcerated, to participate in the proceedings via telephone conferencing and that the New Hampshire prison authorities and the client stood ready to proceed. Efforts by Probate Court personnel to set up the telephone conference proved unsuccessful due to difficulties with the newly installed equipment in the recently built courthouse. The father's attorney sought to continue the trial until such time as the father could appear or until the telephonic conferencing could be conducted on the ground that the father's presence was "necessary to assist [his counsel] during the trial." The department objected. Counsel for the child also preferred that the trial go forward, but expressed concern that appeal would further delay the case. The trial judge denied the motion, basing her decision largely on the failure of the attorney to notify the court in advance of his election to proceed by telephone conference. This, she concluded, would have afforded an opportunity to assure that the equipment was functioning properly.[3]

Testimony was taken from two witnesses, social workers appearing for the department. The documentary evidence consisted

---

[3]The trial judge also noted that the father had not elected to proceed with a written or videotaped deposition, as she had suggested. The father's attorney had ascertained that video conferencing, evidently available in the New Hampshire institution, was not available at the court where trial was scheduled to take place.

of a paternity test and the department's adoption plan. On August 5, 1999, the court issued its findings of fact and conclusions of law dispensing with the need for either parent's consent to adoption. We summarize the trial judge's findings.

At the time the department filed its initial petition to dispense with parental consent to the adoption of Edmund, it appears that the father was already incarcerated in a New Hampshire State prison. At some point in 1995, Edmund was removed from foster care and placed with his maternal aunt, who was already caring for two of Edmund's siblings. On July 31, 1996, the aunt obtained the department's approval to relocate to Florida with Edmund and his siblings. However, in November, 1997, Edmund's placement was disrupted because of his "behavioral problems and emotional difficulties." Edmund was returned to Massachusetts where he was placed in foster care and hospitalized several times. At the time of the trial in July, 1999, Edmund was still hospitalized, but he was taking antipsychotic medications and his behavior was under control. It was the department's plan to return him to his aunt in Florida (who kept in touch with him throughout his placements in the Commonwealth) if the home study underway proved favorable or, in the alternative, to recruit an adoptive family. The Probate Court judge found that Edmund considers his aunt to be his mother. She noted that there was no evidence in the record that the father had ever visited with his son and found that the father was not scheduled to be released from prison until 2008.

On appeal, the father argues that proceeding without his participation violated his constitutional rights to due process, fundamental fairness, equal protection, assistance of counsel, and confrontation. He claims that, if he had been present, he could have presented evidence as to what information he received from the department and what steps he took to foster a relationship with his son. He argues that he "was also denied the opportunity for the court to personally observe [his] character and demeanor at trial." He made no offer of proof as to these issues at trial, nor did he file a motion for a new trial. The father also contends that his release date was unverified and that there were no documents introduced in evidence concerning his criminal record. The sole basis for the judge's finding that the father was to be released in 2008 was the testimony of a social worker who stated that he had made contact with New Hampshire prison officials and believed this

to be the release date. The father made a timely objection and moved to strike the answer. The trial judge admitted the testimony for the purpose of establishing the social worker's "understanding."

When, as here, "there is a deprivation of a constitutionally protected . . . interest," a party has a right to require that "the government act in a fair manner." *Doe* v. *Attorney Gen.*, 426 Mass. 136, 140 (1997). Parents have a fundamental liberty interest in maintaining a familial relationship with their children. *Quilloin* v. *Walcott*, 434 U.S. 246, 255 (1978). When a State seeks to terminate parental rights, it must do so in a manner that meets the requirements of the due process clause. *Santosky* v. *Kramer*, 455 U.S. 745, 752-754 (1982). See *Care and Protection of Robert*, 408 Mass. 52, 58 (1990) (before the State may deprive a parent of the custody of a child "the requirements of due process must be met"). "Minimum due process varies with context." *Spence* v. *Gormley*, 387 Mass. 258, 274 (1982). The court must weigh the private interest that will be affected, the risk to the parent of an erroneous deprivation, and the government's interest in making the determination. *Mathews* v. *Eldridge*, 424 U.S. 319, 334-335 (1976). Citing *Mathews, supra* at 334, we have observed that, "[i]n weighing these factors, . . . '[d]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *O'Brien's Case*, 424 Mass. 16, 19 (1996). See *Commonwealth* v. *Durling*, 407 Mass. 108, 113 (1990); *Commonwealth* v. *Bruno*, 432 Mass. 489, 504 (2000); *Commonwealth* v. *Wilson*, 47 Mass. App. Ct. 924, 925 (1999).

In cases such as the one before us, due process requires that "a parent have the opportunity effectively to rebut adverse allegations concerning child rearing capabilities," *Adoption of Mary*, 414 Mass. 705, 710 (1993), but we have not had occasion to define more precisely the limits of this opportunity. We agree with those States that have determined that an incarcerated parent does not have an absolute right to attend a hearing that could result in the termination of parental rights, particularly if the parent is represented at trial by a lawyer.[4] Procedural due process was not protected here, however, because the father had

---

[4]See, e.g., *Pignolet* v. *State Dept. of Pensions & Security*, 489 So. 2d 588, 590-91 (Ala. App. 1986); *E.J.S.* v. *State Dept. of Health & Social Servs.*, 754 P.2d 749, 752 (Alaska 1988); *In re Appeal in Pima County Juvenile Action No. S-949*, 131 Ariz. 100, 101 (1981); *In re Gary U.*, 136 Cal. App. 3d 494,

made timely and persistent requests of the courts for leave to appear which were denied, he specifically sought to participate through the court-sanctioned mechanism of telephone conferencing, and no other procedure to respond was afforded to him.

In so concluding, however, we go on to state that the precise method of participation should generally be left to the discretion of the trial judge. See, e.g., *In re Render*, 145 Mich. App. 344, 349-350 (1985). Trial court judges should be given some flexibility, consistent with the facts of each case, in determining among several of the currently available options, including but not limited to video or telephonic conferencing during the proceedings, how best to assure that a parent has a meaningful opportunity to respond to the evidence presented at trial. See, e.g., *In re Juvenile Appeal*, 187 Conn. 431, 436-439 (1982) (no due process violation where father was represented by counsel, was given trial transcript in order to rebut testimony, and was able to testify via telephone); *In re Adoption/Guardianship No. 6Z980001*, 131 Md. App. 187, 198-199 (2000) (parent submitted deposition testimony prior to trial, was provided with transcript from the State's case, and was given opportunity to submit an affidavit in response); *State ex rel. Juvenile Dept.* v. *Stevens*, 100 Or. App. 481, 486-487 (1990) (incarcerated father not deprived of due process rights where he was represented by counsel and was able to testify via telephone after adverse witnesses); *In re Randy Scott B.*, 511 A.2d 450, 453-454 (Me.

498-500 (1982); *People ex rel. C.G.*, 885 P.2d 355, 357 (Colo. App. 1994); *In re Juvenile Appeal*, 187 Conn. 431, 439-441 (1982); *In re Heller*, 669 A.2d 25, 32 (Del. 1995); *In re F.L.S.*, 232 Ga. App. 100, 101 (1998); *In re Baby Doe*, 130 Idaho 47, 51-52 (App. 1997); *In re J.S.*, 470 N.W.2d 48, 52 (Iowa App. 1991); *In re J.L.D.*, 14 Kan. App. 2d 487, 491 (1990); *In re S.A.D.*, 481 So. 2d 191, 193-194 (La. App. 1985); *In re Randy Scott B.*, 511 A.2d 450, 452-454 (Me. 1986); *In re Adoption/Guardianship No. 6Z980001*, 131 Md. App. 187, 191-193 (2000); *In re Vasquez*, 199 Mich. App. 44, 48-50 (1993); *In re Welfare of H.G.B.*, 306 N.W.2d 821, 826 (Minn. 1981); *H.W.S.* v. *C.T.*, 827 S.W.2d 237, 242 (Mo. App. 1992); *In re L.V.*, 240 Neb. 404, 414-418 (1992); *State ex rel. Children, Youth & Families Dept.* v. *Ruth Anne E.*, 126 N.M. 670, 674-675 (App. 1999); *In re Raymond Dean L.*, 109 A.D.2d 87, 90-91 (N.Y. 1985); *In re F.H.*, 283 N.W.2d 202, 209-210 (N.D. 1979); *In re Rich*, 604 P.2d 1248, 1252-1253 (Okla. 1979); *State ex rel. Juvenile Dept.* v. *Stevens*, 100 Or. App. 481, 485-488 (1990), cert. denied, 498 U.S. 1119 (1991); *In re A.P.*, 692 A.2d 240, 243-244 (Pa. Super. 1997); *Najar* v. *Oman*, 624 S.W.2d 385, 387 (Tex. App. 1981), cert. denied, 457 U.S. 1108 (1982); *State ex rel M.A.V.* v. *Vargas*, 736 P.2d 1031, 1033-1034 (Utah App. 1987); *In re Darrow*, 32 Wash. App. 803, 807-809 (1982); *State ex rel. Jeanette H.* v. *Pancake*, 207 W. Va. 154 (2000).

1986) (incarcerated father's constitutional rights held adequately protected where his deposition was admitted in evidence and his counsel declined the opportunity to open the record after the trial). Contrast *In re Baby K.*, 143 N.H. 201, 206-208 (1998) (where incarcerated father participated via telephone and his attorney had the dual responsibility of representing his client and acting as a conduit for information from and to the parent, the court held that the father could not have received adequate representation because his attorney was required to perform two roles at once; vacated and remanded to the trial court to devise a mechanism for meaningful participation); *State ex rel. Children, Youth & Families Dept.* v. *Ruth Anne E.*, 126 N.M. 670, 677-678 (1999) (due process rights were violated because parent was not given an opportunity to respond to allegations, e.g., a posttrial deposition after reviewing the evidence).

In the particular circumstances of this case, a deposition conducted prior to trial (whether or not by video) would not, without more, have given the father a meaningful opportunity to be heard. Nor can we say that counsel for the father should have been aware of an obligation to notify the court, prior to trial, that his client would participate in the proceedings by telephone conference. Mindful both of the father's interest, and the governmental interest in an expeditious determination of a child's familial status, we believe that the father should now be allowed the opportunity to respond to the evidence by the filing of his affidavit, which must address with specificity, based on his personal knowledge, only those issues which the father raised in his brief. In light of the length of time this matter has been pending, and the fact that the father was prepared to participate at the time of trial, the father's affidavit should be promptly filed with the court, specific dates to be determined by the trial judge. The department may, in the trial judge's discretion, be given the opportunity to respond to the affidavit, subject to time limits which the trial judge shall impose. The trial judge shall thereafter make such additional findings as may be warranted by any competent, relevant new evidence.

The decree of August 5, 1999, as to father, is vacated and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*