**In re Petition of R.E.S.**

**No. 08–FS–451.**

District of Columbia Court of Appeals.

Argued April 9, 2009.

Decided Aug. 13, 2009.

Laurie P. McManus for appellant.

Stacy L. Anderson, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for the District of Columbia.

Sharon A. Singh filed a brief for appellee, R.E.S.

Before REID, GLICKMAN, and FISHER, Associate Judges.

FISHER, Associate Judge:

D.F., the biological father of D.T., appeals from a final decree of the Superior Court allowing his daughter to be adopted over his objection. He asserts that he did not have a meaningful opportunity to participate in the show cause hearing and that he was denied the effective assistance of counsel. We remand the record for further inquiry concerning the performance of his court-appointed counsel.

## I. The Factual and Procedural Background

D.T. was born on October 10, 1995, and remained in the care of her mother (L.B.) until 2001, when she was removed as a result of neglect. In early 2002, D.F. purportedly learned of D.T.'s birth for the first time when he was asked to undergo a paternity test. D.F. consented to the test, which established his paternity. Acknowledging that he was D.T's father, D.F. visited her on a handful of occasions until October 2002, when he was arrested. He was later convicted of conspiring to sell drugs and sentenced to prison.

The original plan to reunify D.T. with her mother was changed to a permanency goal of adoption in July 2002. D.F. met with D.T.'s social worker in 2002 and suggested two of his sisters as possible caretakers for D.T. The social worker referred D.F.'s sisters to the agency's licensing branch so that they could become certified foster-care providers. D.F. also requested that G.A., his "sister-in-law,"[1] who was a licensed foster care provider, be considered as another placement alternative. The social worker visited G.A.'s home in May and August 2002 and determined that there was not enough room for D.T. D.F.'s fiancee (B.S.) also expressed interest in caring for D.T.

On March 1, 2006, D.T. was placed in the home of R.E.S., who filed a petition to adopt her on September 29, 2006. D.F. was served with notice of the adoption proceedings on December 11, 2006. Two weeks later, he wrote to the Clerk of the Superior Court, opposing the adoption and expressing his view that "I can not give consent for my daughter to be adopted because she will be happier with us." A supplemental notice was served on D.F. on January 10, 2007. In February 2007, Magistrate Judge Dalton received a letter from D.F. requesting that his family be allowed to "appear in court on [his] behalf...." He also asserted that his sister-in-law, G.A., and his fiancee, B.S., "both are qualified to be a foster parent thru [sic] classes and [G.A.] has been a foster parent for about ten years."

The attorney who represented appellant at the show cause hearing was first appointed in the neglect proceedings. In the joint pre-trial statement filed by the parties on February 23, 2007, appellant's counsel stated that he intended to call "family members who had indicated an interest in caring for the child." Counsel later represented that he had not at that time been able to consult with appellant about which witnesses he wanted to call. The trial court granted counsel's March 14, 2007, motion to amend the joint pre-trial statement to identify specific witnesses, including appellant, M.F. (one of appellant's sisters), B.S., and G.A.

On the morning of the July 20, 2007, trial, appellant's counsel moved for a short continuance, stating that he had "just found information where [appellant] is." Magistrate Judge Dalton denied counsel's request, and the trial proceeded. Counsel did not call any witnesses on appellant's behalf.

In her Findings of Fact, Conclusions of Law, and Order, dated August 21, 2007, Magistrate Judge Dalton concluded that D.F.'s consent to R.E.S.'s adoption of D.T. should be waived. She found that "[t]he evidence is beyond clear and convincing" that D.F. had abandoned D.T. by failing to contribute to her support and failing to visit or contact D.T. "by letter, telephone,

---

1. Although appellant has referred to G.A. as his "sister-in-law," it appears to be undisputed that G.A. is not legally married to D.F.'s brother. G.A. is the mother of D.F.'s niece (her daughter is D.T.'s first cousin).

or through the social worker." The court also found that "[n]either parent has appeared in person or telephonically," and D.F.'s "fail[ure] to appear at the Show Cause hearing" was "additional independent evidence" of his abandonment of D.T. In light of the relevant statutory factors and the strong relationship D.T. had established with R.E.S., Magistrate Judge Dalton also found that D.F. was "withholding [his] consent to R.E.S.'s petition for adoption contrary to the best interest of the child."

Appellant D.F. filed a *pro se* motion to vacate that ruling, arguing, among other things, "that my Court Appointed Attorney has been of no assistance ... [and] has not represented my best interest...." Finding "that the father was properly represented" by counsel, Magistrate Judge Dalton denied the motion to vacate on October 1, 2007. On November 17, 2007, the court entered a final decree granting R.E.S.'s petition for adoption. Appellant's counsel filed a Motion for Review and Appeal of the Magistrate Judge's Order of Adoption on December 14, 2007.

Before denying D.F's motion for review, Judge Long conducted a careful and extensive analysis of the issues. She held that Magistrate Judge Dalton erred by "imply[ing] that [appellant's] physical absence from the trial proceeding was a voluntary expression of disinterest" but determined that "this reference to the father's failure to appear for trial should not be magnified into reversible error" because the other factors considered were sufficient to find that D.F. had abandoned D.T. Judge Long concluded "as a matter of law that the Magistrate Judge acted within her discretion as the finder of fact in determining that [ ] D.F. had abandoned" his daughter. Judge Long also observed that "[t]he 'best interests' analysis by itself would be a sufficient basis for waiving the father's consent to the adoption" and concluded that D.F. had "challenge[d] only the alternative ground for waiver of consent, *i.e.* the finding that D.F. had 'abandoned' his daughter." This appeal followed.

## II. Appellant Was Entitled to Participate in the Hearing

■ The District of Columbia concedes that, as D.T.'s biological parent, D.F. had a constitutional right "to meaningful participation in a proceeding that terminates his parental rights." *See Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) ("A fundamental requirement of due process is 'the opportunity to be heard' ... which must be granted at a meaningful time and in a meaningful manner.") (citation omitted). Although this right was not extinguished by his incarceration, appellant had no right to appear in person. *In re Adoption/Guardianship No. 6Z980001*, 131 Md.App. 187, 748 A.2d 1020, 1023 & n. 2 (2000) (collecting cases). Courts generally agree that " 'such prisoners do not have the right to be brought into the state for the termination hearing, as long as the parent is represented by counsel and provided with alternative means of participating in the hearing.' " *Id.* (quoting Philip M. Genty, *Procedural Due Process Rights of Incarcerated Parents in Termination of Parental Rights Proceedings: A Fifty State Analysis*, 30 J. Fam. L. 757, 775–76 (1991–92)). These "alternative means" may include participation by telephone, or by reviewing a transcript of the hearing and providing rebuttal testimony, sometimes by deposition. *See generally In re Baby K.*, 143 N.H. 201, 722 A.2d 470, 473–75 (1998); *Division of Youth & Family Services v. M.Y.J.P.*, 360 N.J.Super. 426, 823 A.2d 817, 841–43 (2003).

■ Counsel apparently planned to have his client participate by telephone, and there is every reason to believe that would have been allowed. Magistrate Judge Dalton explained that she "has presided over many adoption trials and has always permitted parties, especially incarcerated parties, to participate by telephone when requested to do so." In this case, however, she "did not receive a [timely] request from counsel to have the biological father participate at trial by telephone." Instead, on the morning set for trial, counsel requested a continuance, perhaps so he could make such arrangements.

■ As with many procedural rights, a prisoner's opportunity to participate in the show cause hearing may be forfeited if it is not asserted in a timely fashion. Here, Magistrate Judge Dalton concluded (and Judge Long affirmed) that the request for a continuance came too late. "Unless the denial of a request for continuance is 'so arbitrary as to deny due process,' it is reviewable only for abuse of discretion." *Robinson v. United States*, 797 A.2d 698, 710 n. 16 (D.C.2002) (quoting *O'Connor v. United States*, 399 A.2d 21, 28 (D.C.1979)). Appellant has not made such a showing here.

Therefore, considered as a separate issue, the denial of appellant's day-of-trial request for a continuance did not constitute reversible error. Nevertheless, appellant cites his counsel's failure to make arrangements for his participation by telephone (or by some other means) as one of several grounds for claiming ineffective assistance of counsel, and we now turn to that issue.

## III. Appellant Has a Statutory Right to the Effective Assistance of Counsel

■ When a court in the District of Columbia considers the termination of a parent-child relationship,[2] the parent has a statutory right to representation by counsel "at all critical stages of the proceedings." D.C.Code § 16–2304(b)(1) (2001).[3] Counsel will be appointed if a parent is "financially unable to obtain adequate representation." *Id.* For the reasons explained below, we now hold that counsel appointed to represent a parent under D.C.Code § 16–2304(b)(1) (2001) in a proceeding where the termination of the parent and child relationship is under consideration has the statutory duty to competently represent his or her client.[4]

2. "An adoption following the waiver of a birth parent's consent effectively terminates that parent's interest in the care, custody and control of her child." *In re H.B.*, 855 A.2d 1091, 1098 (D.C.2004); *accord, In re D.R.M.*, 570 A.2d 796, 804 (D.C.1990) ("granting the adoption petition here carried the consequence of terminating B.M.'s parental rights").

3. D.C.Code § 16–2304(b)(1) (2001) provides:

When a child is alleged to be neglected or when the termination of the parent and child relationship is under consideration, the parent, guardian, or custodian of the child named in the petition or in a motion to terminate is entitled to be represented by counsel at all critical stages of the proceedings, and, if financially unable to obtain

adequate representation, to have counsel appointed in accordance with rules established by the Superior Court of the District of Columbia.

4. The Constitution does not require the appointment of counsel in every proceeding leading to the termination of parental rights. *Lassiter v. Dep't of Social Services*, 452 U.S. 18, 32, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Whether a particular litigant is entitled to the appointment of counsel in such proceedings is determined on a case-by-case basis. *See id.* (holding that it "is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements") (citation omitted).

Many states interpreting similar statutes have concluded that "the statutory right to counsel in parental-rights termination cases embodies the right to effective counsel." *In re M.S.*, 115 S.W.3d 534, 544 (Tex.2003). *See, e.g., In re K.L.*, 751 N.W.2d 677, 685 (N.D.2008) ("Because of the legislative directive that respondents be afforded counsel in termination proceedings, it would be absurd and meaningless to have the right to appointed counsel, but not to require counsel to be effective in this context."); *In re E.H.*, 880 P.2d 11, 13 (Utah Ct.App.1994) ("[T]he statute would be meaningless or illusory if it guaranteed only ineffective assistance of counsel"); *In re M.D.(S.)*, 168 Wis.2d 995, 485 N.W.2d 52, 55 (1992) ("[W]here the legislature provides the right to be 'represented by counsel' or represented by 'appointed counsel,' the legislature intended that right to include the *effective* assistance of counsel."); Calkins, *supra* note 4, at 199 ("In all but a few states, whether the right to counsel stems from a state constitutional provision or from a statute, it appears that parents have a right to effective assistance of counsel in proceedings to terminate their parental rights."); *but see In re Azia B.*, 10 Neb.App. 124, 626 N.W.2d 602, 612 (2001) ("declin[ing] to recognize the claim of ineffective assistance of counsel in a civil action").

■ We need not hold that a statutory right to the appointment of counsel necessarily implies a right to the effective assistance of counsel. In this context, there is

direct evidence of Congress's intent that appointed counsel perform competently. D.C.Code § 11–1103 (2009 Supp.), part of the District of Columbia Family Court Act of 2001, expressly provides that "[t]he Superior Court shall establish standards of practice for attorneys appointed as counsel in the Family Court of the Superior Court." In response to this mandate, the Superior Court has developed Standards of Practice for CCAN Appointments. See Administrative Order 03–07 (D.C.Super.Ct., Feb. 28, 2003). These standards, which expressly apply to termination of parental rights proceedings, "are intended to define the role and responsibilities of counsel" and "to improve the quality of representation." *Id.* Considering D.C.Code § 16–2304(b)(1) (2001) in conjunction with D.C.Code § 11–1103 (2009 Supp.) and Administrative Order 03–07, we hold that parents who are represented by appointed counsel in a termination of parental rights proceeding have a statutory right to the effective assistance of counsel.

This is not the first time we have held that the poor quality of counsel's performance may provide a remedy to the client in circumstances where the Sixth Amendment right to counsel does not apply. In *In re Ak.V.*, 747 A.2d 570 (D.C.2000), for example, we reviewed the denial "of appellant's motion to file a late appeal of a finding of neglect and disposition order removing appellant's children from her custody." *Id.* at 571. We recognized that "in a civil case the usual remedy for misfeasance or nonfeasance on the part of

---

The Court in *Lassiter* noted that at that time (nearly thirty years ago) the District of Columbia and a majority of states "provide[d] statutorily for the appointment of counsel in termination cases" and the Court's opinion "in no way implie[d] that the standards increasingly urged by informed public opinion and now widely followed by the States are other than enlightened and wise." *Id.* at 34, 101 S.Ct. 2153. "[M]ost states have now moved be-

yond *Lassiter*, and require appointment of counsel either by state constitution, statute, rule, or case law." Susan Calkins, *Ineffective Assistance of Counsel in Parental–Rights Termination Cases: The Challenge for Appellate Courts*, 6 J.App. Prac. & Process 179, 191 (2004). Because appellant was represented by counsel, we need not decide whether he had a Constitutional right to the appointment of counsel.

counsel is for the aggrieved party to bring a malpractice suit against the attorney seeking monetary damages." *Id.* at 576. But "[t]hat course does not provide an apt remedy here, where the effect of a failure by counsel to protect the client's rights may be loss of the ability to contest a court-ordered separation of child from parent." *Id.* at 576–77. "[W]e [were] unwilling to conclusively impute counsel's knowledge [that an appealable order had been issued] to appellant with the result that appellant's right to judicial review is lost," *id.* at 577, and we remanded for the trial court to "determine whether there is excusable neglect" justifying extension of the time for appeal. *Id.* at 579. "On remand, the trial court found that excusable neglect existed and granted appellant's motion to extend, retroactively, her time for filing a notice of appeal." *In re Am.V.*, 833 A.2d 493, 495 n. 2 (D.C.2003).

In *Williams v. United States*, 783 A.2d 598 (D.C.2001) (en banc), the full court held that when "a convicted defendant entitled to representation under the District of Columbia Criminal Justice Act appeals his conviction, and while the appeal is pending appointed counsel files a § 23–110 motion in accordance with *Shepard* [*v. United States*, 533 A.2d 1278 (D.C.1987)],[5]

counsel has the statutory duty to take the steps necessary to effect an appeal requested by the defendant from the denial of that motion." *Williams*, 783 A.2d at 601. We also held "that the breach of counsel's statutory duty to note an appeal in these circumstances entitles the defendant to a new opportunity to appeal the denial." *Id.* at 599.[6]

We found this statutory duty in the Criminal Justice Act, which provides in relevant part that "[a] person for whom counsel is appointed shall be represented at every stage of the proceedings from such person's initial appearance before the court *through appeals,* including ancillary matters appropriate to the proceedings." D.C.Code § 11–2603 (2001) (emphasis in *Williams*). (The reference to appeals was emphasized because, in *Doe v. United States*, 583 A.2d 670, 674 (D.C.1990), we previously had held that it is part of counsel's responsibility on direct appeal to consider the advisability of filing a § 23–110 motion based on the ineffectiveness of trial counsel. See note 5, *supra.*) In *Williams* we also considered the *Plan for Furnishing Representation To Indigents Under the District of Columbia Criminal Justice Act,* particularly the requirement that "[i]n cases where an appeal is available as of

5. In *Shepard,* we held "that, if an appellant does not raise a claim of ineffective assistance of counsel during the pendency of the direct appeal, when at that time appellant demonstrably knew or should have known of the grounds for alleging counsel's ineffectiveness, that procedural default will be a barrier to this court's consideration of appellant's claim." 533 A.2d at 1280. We later held in *Doe v. United States,* 583 A.2d 670, 674 (D.C. 1990), that "an inherent part of counsel's responsibility on direct appeal is to consider whether the client's interests require the filing of a motion under § 23–110 based on ineffectiveness of counsel."

6. The court focused on statutory duties in *Williams* because there is no constitutional

right to the effective assistance of counsel in post-conviction proceedings. *Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings.... Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."); *Lee v. United States,* 597 A.2d 1333, 1334 (D.C.1991) ("Since Lee had no constitutional right to counsel for his § 23–110 motion, he cannot prevail on a claim that his counsel was constitutionally ineffective in relation to that motion."), *overruled on other grounds, Williams v. United States,* 783 A.2d 598, 604 n. 8 (D.C.2001) (en banc).

right, ... [and i]f requested to do so by the [defendant], counsel shall file a timely notice of appeal...." *Id.,* Section IV, ¶ 3.

Our decision in *Williams* was strictly limited to the issue before us, however. We did "not reach the question of whether the failure to effect an appeal in these circumstances is a denial of due process of law." 783 A.2d at 604. We also "reserve[d] for another case the issue of what rights, if any, a defendant may have with respect to appellate counsel's *conduct* of the hearing on a claim of ineffectiveness of counsel made in accordance with *Shepard.*" *Id.* at 600 n. 1 (emphasis in original). In that sense, we go further here by recognizing a statutory right to the effective assistance of counsel throughout the representation.

We have not forgotten "the powerful demand for finality in adoption proceedings," *In re M.N.M.,* 605 A.2d 921, 925 (D.C.1992), and we will have more to say on that subject when we discuss the procedures by which such claims of ineffective assistance may be raised.

## IV. We Adopt the *Strickland* Standard

Courts that recognize a right to the effective assistance of counsel in a proceeding to terminate parental rights by and large have applied one of two standards; some have chosen the "fundamental fairness" standard articulated in *State ex rel. Juvenile Dep't v. Geist,* 310 Or. 176, 796 P.2d 1193 (1990), but most have adapted the test articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See* Calkins, *supra* note 4, at 212–28 (surveying decisions); *see also, e.g., In re M.S.,* 115 S.W.3d at 545 (seeing "no reason not to apply [the *Strickland test* ] in our civil parental-rights termination proceedings."); *In re E.H.,* 880 P.2d at 13 (applying *Strickland* in the context of termination of parental rights pro-

ceedings). The parties to this appeal have expressed a preference for the *Strickland* standard, which is well-known to the courts of this jurisdiction, and we think this is a sensible recommendation. "*Strickland* is clear, familiar to lawyers and judges, and carries with it a developed body of case law...." *New Jersey Division of Youth & Family Services v. B.R.,* 192 N.J. 301, 929 A.2d 1034, 1038 (2007). We therefore adopt *Strickland,* recognizing that this standard developed in criminal law will have to be tailored in some respects when used to judge the effectiveness of appointed counsel in a proceeding to terminate parental rights.

We will not attempt to summarize our volumes of case law applying *Strickland.* Nevertheless, we reiterate that a claim of ineffective assistance has "two components. First, the [parent] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the statute. 466 U.S. at 687, 104 S.Ct. 2052. To satisfy the second prong-demonstrating prejudice-the parent must show "that counsel's errors were so serious as to deprive [him or her] of a fair trial, a trial whose result is reliable." *Id.* In other words, the parent must show a "reasonable probability" that, but for counsel's deficient performance, the outcome of the trial would have been different. However, it bears repeating that the parent is not required to prove by a preponderance of the evidence that "the errors of counsel ... determined the outcome." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In assessing counsel's performance, it will be instructive to consult the Standards of Practice for CCAN Appointments developed by the Superior Court,

but we caution that "[t]hese basic duties neither exhaustively define the obligations of counsel nor form a checklist for judicial evaluation of attorney performance. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052.[7]

We emphasize, moreover, that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. 2052. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, [and] . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* Furthermore, when examining a claim of prejudice, a reviewing court must never lose sight of the principle that governs in this context-the best interest of the child. *See Wilkins v. Ferguson,* 928 A.2d 655, 667 (D.C.2007) (As our cases have emphasized, " 'in all proceedings affecting the future of a minor, the decisive consideration is the best interests of the child . . . .' ") (citation omitted). We have recognized that "it is generally contrary to a child's best interest 'to take a child out of a loving home, when she ha[s] lived at that home for a substantial period of time as a result of her biological parents' inability or unwillingness to care for her.' " *In re An.C.,* 722 A.2d 36,

41 (D.C.1998) (quoting *In re Application of L.L.,* 653 A.2d 873, 883 (D.C.1995)).

## V. Such Claims May Be Raised on Direct Appeal

One of the obvious concerns that must be considered in recognizing a statutory right to the effective assistance of counsel in this context is the possibility that, as in criminal cases, it will lead to a seemingly-endless round of collateral attacks. "Finality in the resolution of parental rights termination cases should be achieved as expeditiously as possible, consistent with due process." *Geist,* 796 P.2d at 1200.

There are important differences between adoption cases and criminal cases, however. First, there is no statutory provision, comparable to D.C.Code § 23–110 (2001), permitting a collateral attack upon an adoption decree. "Title 16 of the D.C.Code . . . contains no procedural format for moving to set aside a final decree of adoption." *In re M.N.M.,* 605 A.2d 921, 929 (D.C.1992). Second, "the powerful demand for finality in adoption proceedings [is] reflected in D.C.Code § 16–310, . . . [which] by its terms is intended to close the door on attempts to invalidate final adoption decrees after one year." *Id.* at 925.[8]

Concern for expedition and finality has led many jurisdictions to require that these claims of ineffectiveness be raised on direct appeal. According to Justice Calkins of the Maine Supreme Judicial Court,

---

7. Speaking in the context of criminal cases, the Court in *Strickland* elaborated: "Prevailing norms of practice as reflected in American Bar Association standards and the like, . . . are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." 466 U.S. at 688–89, 104 S.Ct. 2052.

8. D.C.Code § 16–310 (2001) provides: "An attempt to invalidate a final decree of adoption by reason of a jurisdictional or procedural defect may not be received by any court of the District, unless regularly filed with the court within one year following the date the final decree became effective."

who conducted a comprehensive analysis of this issue, "[t]he most common vehicle for raising an ineffectiveness claim in a parental-termination case is the direct appeal of the termination order." Calkins, *supra* note 4, at 200. She concluded "[t]he most persuasive reason in favor of direct appeal is that, in most cases, it will consume the least amount of time." *Id.* at 207.

 In the absence of a statute directing otherwise, we hold that a direct appeal is the proper vehicle for raising a claim that appointed counsel has been ineffective in a termination of parental rights proceeding. *See B.R.*, 929 A.2d at 1040 ("[W]e direct that claims of ineffective assistance of counsel in termination cases be raised on direct appeal"); *Geist*, 796 P.2d at 1201 ("Because of the importance of expeditious resolution of termination proceedings, and absent statutes providing otherwise, we hold that any challenges to the adequacy of appointed trial counsel in such proceedings must be reviewed on direct appeal.").[9]

 To promote expedited review of ineffectiveness claims, we require appellate counsel to raise the issue by motion as soon as possible, rather than waiting for the briefing stage of the appeal. Any such motion must be filed "within one year following the date the final decree became effective." D.C.Code § 16–310 (2001). When the record permits, we will rule on such motions in an expedited fashion; on other occasions, we will remand the record for further inquiry while the rest of the

appeal proceeds. Moreover, recognizing the importance of finality in the context of proceedings to terminate parental rights, neither we nor the Superior Court will consider such a claim after the direct appeal has been concluded.[10]

 The Supreme Court of New Jersey has aptly described what we ordinarily will expect from an appellant who seeks to raise an ineffectiveness claim on direct appeal:

[A]ppellate counsel must provide a detailed exposition of how the trial lawyer fell short and a statement regarding why the result would have been different had the lawyer's performance not been deficient. That will include the requirement of an evidentiary proffer in appropriate cases. For example, if the failure to produce expert or lay witnesses is claimed, appellant will be required to supply certifications from such witnesses regarding the substance of the omitted evidence along with arguments regarding its relevance.

*B.R.*, 929 A.2d at 1040. To borrow from what we said in a related context, the parent must "set forth in detail a persuasive case. . . ." *Watson v. United States*, 536 A.2d 1056, 1060 (D.C.1987) (en banc) (establishing procedure for raising a claim of ineffective assistance of appellate counsel). "[C]onclusory assertions are not sufficient. The movant must give 'chapter and verse.'" *Id.*

9. This appeal does not require us to decide whether such a claim might also be raised in the trial court pursuant to Super. Ct. Adopt. R. 60(d), which provides: "(d) *Finality of decree.* A motion seeking to invalidate a decree of adoption by reason of a jurisdictional or procedural defect shall be filed within one year following the date the final decree became effective." Even if relief is available under this provision, such a motion is subject to the same one-year limitation embodied in

D.C.Code § 16–310 (2001). *See generally In re W.E.T.*, 793 A.2d 471 (D.C.2002).

10. We do not here decide whether a parent who did not file a direct appeal could pursue a claim of ineffective assistance in the Superior Court, provided that he did so within the one-year time limit established in D.C.Code § 16–310 (2001). See note 9, *supra.*

■ We anticipate that, "[i]n many cases, the issue will be resolvable on the appeal record alone." *B.R.*, 929 A.2d at 1040. In other circumstances, a hearing and findings of fact will be necessary to amplify the record. In those cases, we will remand the record for a prompt hearing and decision "with this court retaining jurisdiction pending the trial court's findings and a return of the record." *Watson*, 536 A.2d at 1061.

## VI. Appellant Has Raised Substantial Questions About the Performance of His Trial Counsel

■ Counsel for appellant has done a commendable job of preserving and presenting this issue without guidance from our case law. On September 12, 2008, less than one year after the final decree of adoption became effective, *see* D.C.Code § 16–310 (2001), she filed in this court a motion asking us to remand for an evidentiary hearing on appellant's claim that he had been denied the effective assistance of counsel. This motion was not a barebones procedural request, but contained more than a dozen pages of cogent legal argument and citation to the record. It was supported by statements or affidavits submitted by appellant, G.A., and B.S. The issue thus was raised in a timely fashion, and we conclude that the allegations are substantial enough to require an evidentiary hearing.[11]

Appellant makes a number of complaints about his attorney's performance, emphasizing counsel's apparent failure to keep in touch with appellant, his untimely request for a continuance, and his purported failure to protect appellant's right to participate meaningfully in the show cause hearing (by telephone or otherwise). Appellant also faults counsel for failing to call any witnesses to support appellant's preference that members of his family provide care for D.T. Many of these claims are supported by the trial record. Others are based on affidavits which proffer in some detail what appellant and other witnesses would have said if they had been called to testify.

Indeed, both judicial officers pointed to some of counsel's failures as justifications for denying appellant's claims. For example, Magistrate Judge Dalton found that "counsel's request for a continuance on the day of the trial was inappropriate and unreasonable, given that the father is incarcerated, a fact known to counsel." "The whereabouts of the biological father [were] known and in any event, were easily ascertainable since his prison identification number was known." "[C]ounsel had more than adequate time to make the necessary arrangements to ensure that the father participate by telephone."

Judge Long highlighted at least three distinct failures of counsel. "As the findings of the trial court show, the attorney for the father had not been sufficiently diligent or aggressive in using available prisoner identification information to pinpoint his client's location and to commence making arrangements with the United States Bureau of Prisons." The court also noted that "[i]f there was any viable basis for finding that the nominated caregivers were actually willing to raise the child, the father's lawyer could have called them as witnesses to explain their commitment to the trial judge. No witnesses were called on behalf of the father. Thus, there is absolutely no evidence in the record to

11. We initially held the motion in abeyance and directed appellant to file an appropriate motion in the Superior Court within twenty days. Thereafter, the District of Columbia moved for reconsideration and persuaded us to vacate our previous order as premature because it had not yet been established in this jurisdiction that a parent has a right to the effective assistance of counsel in this context.

refute the testimony of the social worker, who explained why such persons were not appropriate alternatives to the petitioner." Finally, counsel's "Motion for Review contain[ed] only terse, conclusory arguments.... It contain[ed] no meaningful briefing of points and authorities."

Notably, G.A. has stated in her affidavit that she is licensed in the District to provide therapeutic foster care and to have two foster children, she was asked by appellant in 2002 to take custody of D.T., and she was then—and remains—willing to have D.T. live with her and to adopt D.T. G.A. added that she called D.F.'s attorney a few times to receive updates on D.T., but she has not heard from him since late 2005 or early 2006.

Taken together, these allegations of deficient performance by counsel are far from conclusory. They are, instead, sufficient to require further inquiry into counsel's effectiveness.[12] We recognize, of course, that we have not heard counsel's side of the story, and "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. For example, it appears from this record that appellant failed to keep counsel informed of his new location in prison. It may also be true that appellant's family members did not follow through on what they needed to do in order to qualify to assume custody of D.T. We previously have rejected the "wait and see" approach to foster care. *In re Application of L.L.,* 653 A.2d 873, 887–88 (D.C.1995).

Both the District of Columbia and R.E.S. have urged us to reject the claim of ineffective assistance of counsel on the ground that appellant cannot satisfy the prejudice prong of *Strickland.* They emphasize, among other things, that appellant has never had a parent-child relationship with D.T., that D.T. seems to have found a loving home with R.E.S., and that our guiding principle is the best interest of the child. We by no means foreclose an ultimate resolution of the claim on this basis, but, for reasons which should be apparent from what we have said, we feel the need to learn more about why counsel did not preserve his client's right to participate in the show cause hearing and why he did not call witnesses to support his client's position. In other words, we deem it important to know what the record would have looked like if these witnesses had been called.

## VII. Conclusion

Before this court may rule upon appellant's challenge to the termination of his parental rights, a hearing will be necessary to consider his ineffective assistance of counsel claim. In light of the factors discussed above, we remand the record (but not the case) for the limited purpose of determining whether appellant's counsel was ineffective. Because we remand the record only, the trial court will not have jurisdiction to set aside the adoption. If the court decides that counsel was not ineffective, the record will be returned to us for further appellate proceedings. If the trial court finds that counsel was ineffective and is inclined to grant a new trial (or reopen the record) on R.E.S.'s petition for adoption, we draw the court's attention to the procedures outlined in *Nolan v. Nolan,* 568 A.2d 479, 489 (D.C.1990), and *Smith v. Pollin,* 90 U.S.App. D.C. 178, 194 F.2d 349 (1952).

*So ordered.*

---

12. We have not attempted to summarize all of appellant's claims, and do not intend by this abbreviated discussion to limit the scope of the trial court's inquiry.